**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Greenbrier Veterinary Hospital,**
**Employer Below, Petitioner**

**v.)**     **No. 24-6**     (JCN: 2014022066)
                             (ICA No. 23-ICA-227)

**Tracy Brownell,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Greenbrier Veterinary Hospital appeals the November 1, 2023, memorandum decision of the Intermediate Court of Appeals of West Virginia ("ICA"). Respondent Tracy Brownell filed a timely response.[1] The issue on appeal is whether the ICA erred in reversing the May 11, 2023, decision of the West Virginia Workers' Compensation Board of Review, which affirmed the claim administrator's September 15, 2022, order denying authorization for a second evaluation by a neurosurgeon.[2] Upon our review, we determine that oral argument is unnecessary and that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for reversal of the ICA's decision. *See* W. Va. R. App. P. 21.

The claimant, a dog groomer, suffered an injury in the course of and resulting from her employment in September 2013 when she tripped over a chair. The claim administrator held the claim compensable for an injury to the lumbar spine in December 2013. Also, in December 2013, an MRI showed a disc herniation at L5-S1, disc bulging at L3-L4 and L4-L5, and degenerative

---

[1] The petitioner is represented by counsel Steven K. Wellman and James W. Heslep, and the respondent is represented by counsel Reginald D. Henry and Lori J. Withrow.

[2] In reversing the Board of Review, the ICA remanded the case to the Board for further evidentiary development regarding whether the neurosurgeon whom the claimant saw in Virginia, Eric A. Marvin, D.O., was in the claim administrator's provider network. The employer appeals only the ICA's decision to authorize a second evaluation by a neurosurgeon and states that the issue of Dr. Marvin's status as a network provider is currently before the Board. Because we reverse the ICA's decision, our decision herein renders Dr. Marvin's status a moot issue.

disc disease. Ultimately, in May 2016, the Workers' Compensation Office of Judges[3] reversed a September 2015 decision of the claim administrator and added a herniated disc at L5-S1 and disc bulging at L3-L4 and L4-L5 to the claim as compensable conditions.

However, a May 2018 MRI showed a disc herniation at L4-L5 instead of L5-S1. The May 2018 MRI also revealed left lateral recess stenosis at L1-L2; mild central stenosis at L2-L3 and L3-L4; disc space narrowing, degenerative reactive sclerosis, severe focal central spinal stenosis, and left lateral recess stenosis at L4-L5; and first-degree spondylolisthesis of L4 on L5. In April 2019, during an independent medical evaluation, Joseph E. Grady II, M.D., found that the progression of the claimant's degenerative changes, particularly those at L4-L5, were most likely the result of a natural progression, particularly given the claimant's former morbid obesity. The claimant reported that her significant weight loss did not improve her back pain. Dr. Grady stated that he could not exclude the possibility of underlying diabetic neuropathy given the claimant's history of diabetes and the nonspecific distribution of her sensory abnormality. Therefore, Dr. Grady concluded that the disc herniation at L4-L5 could not be attributed to the compensable injury because the L4-L5 herniation was not present on the December 2013 MRI. Dr. Grady found that the claimant achieved maximum medical improvement regarding the compensable injury.

Like the May 2018 MRI, a November 2019 MRI showed a disc herniation at L4-L5 with severe central canal stenosis and bilateral facet hypertrophy resulting in neuroforaminal stenosis, left greater than the right. The November 2019 MRI also revealed disc bulging at L2-L3, L3-L4, and L5-S1. The November 2019 MRI showed no disc herniation at L5-S1. In November 2020, during an independent medical evaluation, David L. Soulsby, M.D., stated that the disc herniation at L4-L5 was not related to the compensable injury given that the L4-L5 herniation did not appear on an MRI until May 2018. Dr. Soulsby found that the claimant's preexisting conditions included obesity, Cushing's disease, diabetes mellitus with neuropathy, and degenerative disc disease and that none of those preexisting conditions was caused or aggravated by the compensable injury. Dr. Soulsby found that the claimant achieved maximum medical improvement.

In August 2022, during the claimant's initial consultation with a neurosurgeon, Rida S. Mazagri, M.D., stated that the November 2019 MRI showed severe stenosis at L4-L5 with spondylolisthesis and found that the claimant had decreased sensation in both of her thighs. Dr. Mazagri recommended surgery but noted that the claimant decided against it at the time. As Dr. Mazagri planned to leave the country for a year, Dr. Mazagri stated that one of his colleagues would perform the surgery if the claimant changed her mind.

Also, in August 2022, the claimant requested a second evaluation by a neurosurgeon. Despite the claim administrator's denial of authorization, the claimant saw Eric A. Marvin, D.O., in December 2022 following another MRI. The December 2022 MRI showed diffuse degenerative changes and significant stenosis at L4-L5 due to a herniated disc, listhesis, and severe facet arthropathy. Dr. Marvin recommended immediate surgery but stated that the claimant wanted to wait. Dr. Marvin noted that the claimant could lose functionality if she did not have surgery.

---

[3] In 2022, during a restructuring of the West Virginia worker's compensation system, the Office of Judges ceased to exist, and the Board of Review took over its functions.

The claimant testified at deposition in January 2023. The claimant stated that Dr. Marvin told her that she would be paralyzed if she did not undergo surgery. The claimant testified that the operation recommended by Dr. Mazagri involved "[p]utting a cage in my back." The claimant stated that she wanted a second opinion for two reasons. Due to Dr. Mazagri's travel plans, the claimant testified that she had only two weeks to decide whether to have surgery if she wanted Dr. Mazagri to perform the procedure. In addition, the claimant stated that she was "terrified of back surgeries" and had hoped that another physician would tell her that an operation was not necessary. The claimant testified that she is now prepared to have the recommended surgery. The claimant stated that her present symptoms include sharp pain, throbbing, aching, burning, and numbness from the "lower back down." The claimant testified that she did not have back symptoms prior to the compensable injury. The claimant stated that she could not squat or walk for long distances. The claimant testified that, due to the denial of authorization, Dr. Marvin submitted his bills to her private insurer.

In May 2023, the Board of Review affirmed the claim administrator's order denying authorization for a second evaluation by a neurosurgeon, finding that a preponderance of the evidence showed that the denial was proper. In *Greenbrier Veterinary Hospital v. Brownell*, No. 23-ICA-227, 2023 WL 7203363 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision), the ICA reversed the Board's decision based on its own finding that the disc bulging at L4-L5, which the Office of Judges found compensable in 2016, worsened into the L4-L5 disc herniation that first appeared on an MRI in 2018. *Id.* at *3.

This Court reviews questions of law de novo, while we accord deference to the Board of Review's findings of fact unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). West Virginia Code § 23-4-3 and West Virginia Code of State Rules § 85-20-9.1 provide that the claim administrator is required to provide a claimant with treatment which is medically related and reasonably necessary to treat a compensable injury as the workers' compensation system "was created and exists only for the payment of compensation for injuries and is not a health and accident fund." *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 799, 172 S.E.2d 698, 700 (1970).

On appeal, the employer argues that no medical evidence supports the ICA's decision to reverse the denial of a second evaluation by a neurosurgeon. The claimant counters that the ICA properly found that the Board of Review clearly erred in affirming the denial of authorization for a second evaluation by a neurosurgeon. We agree with the employer.

The Board of Review found that a preponderance of the evidence showed that the claimant was not entitled to a second evaluation given the requirement that treatment must be medically related and reasonably necessary to treat a compensable injury. We find that that the ICA improperly substituted its decision for that of the Board of Review because "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). The only two physicians who addressed whether the L4-L5 disc herniation was related to the compensable injury were Drs. Grady and Soulsby, and they both found that the L4-L5 disc herniation was not related. Drs. Grady and Soulsby each indicated that the L4-L5 disc herniation

did not appear on an MRI until nearly five years after the compensable injury occurred and attributed the L4-L5 disc herniation to the claimant's various non-compensable conditions such as degenerative disc disease and obesity. Therefore, we reverse the ICA's decision, which reversed the Board's decision affirming the claim administrator's order denying a second evaluation by a neurosurgeon.

Reversed.

**ISSUED: January 14, 2025**


**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV